**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Whitehall Jewelers Holdings, Inc., et al., | ) | Case No. 08-11261(KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re Dkt. Nos. 15 and 314** |

# MEMORANDUM OPINION

## INTRODUCTION

The Debtors, Whitehall Jewelers Holdings, Inc., and affiliated entities ("Debtors") have submitted to the Court an issue of great importance to Debtors in their Chapter 11 liquidation: is it permissible pursuant to Section 363 (f)(4) of the Bankruptcy Code to sell consigned goods in a sale under Section 363 of the Bankruptcy Code? The vendors of the consigned goods raise a hue and cry that Debtors are attempting to sell property Debtors do not own. The resolution of the issue is extremely time sensitive and the opinion is therefore more brief than the Court would like. The Debtors require the Court's ruling for a sale of all of their assets. The bid deadline is tomorrow, July 29, 2008 at 12:00 p.m., and a sale hearing is scheduled for August 8, 2008 at 10:00 a.m. The framework of the urgency is Debtors' intention to sell the consigned goods at the auction, which will almost certainly result in significant losses to the consignment vendors. The legal issues are as interesting as they are important. The Court has not been asked to conduct an evidentiary hearing and therefore will limit the discussion to the most relevant, undisputed facts.

## RELEVANT FACTS

### A. Background

Debtors are nationwide specialty retailers of fine jewelry, offering a selection of merchandise including diamonds, gold, precious and semi-precious jewelry and watches. They operate 373 retail stores in 39 states. On June 23, 2008 (the "Petition Date"), the Debtors each filed a petition for relief under Chapter 11 of the Bankruptcy Code.

### B. The Debtors' Consignment Program

As of the Petition Date, a substantial portion of the inventory held by the Debtors at their retail stores was comprised of consigned goods (the "Consigned Goods") received from approximately 124 consignment vendors (the "Consignment Vendors"). The Debtors estimate that, as of the Petition Date, they held approximately $63 million of Consigned Goods in inventory at their retail stores. The Consignment Vendors, as a group, are Debtors' largest creditors.

The relationship between the Debtors and each Consignment Vendor is in nearly all instances governed by a Vendor Trading Agreement (the "VTA"), which in its generic form provides, in part:

> The Parties intend that the transfer and delivery of goods by Consignor to Consignee pursuant to these Terms of Consignment shall be characterized as a "Consignment" by a "Consignor" to a "Consignee" within the respective meanings of each such term under the Uniform Commercial Code as adopted in each applicable jurisdiction (the "U.C.C.") and the provisions of the U.C.C. relating to consignment, including

> without limitation Section 9-103, 9-317, 9-319 and 9-324 thereof, shall apply hereto.

Exhibit A to VTA, ¶ 1(c). The VTA further provides:

> Consignor is and shall remain the owner of Consigned Merchandise, retaining full title to each item of Consigned Merchandise . . . . Consignee shall acquire no right, title or interest in the Consigned Merchandise other than the right to possess the Consigned Merchandise as a consignee and sell the Consigned Merchandise as provided under the Terms of Consignment.

Exhibit A to VTA, ¶ 2. Finally, the VTA provides that Consigned Goods were "sold to Whitehall by Vendor on a 'sale or return' basis." VTA, ¶ 9.[1]

The Consigned Goods were delivered to the Debtors for resale to the Debtors' retail customers and are of the same general nature and quality as goods that the Debtors purchased directly for their inventory ("Asset Goods"). The Consigned Goods are not segregated or otherwise identified as Consigned Goods to the Debtors' customers.

Debtors have classified the Consignment Vendors as follows:

1. Consignment Vendors who failed to file financing statements and those who filed improperly or who failed to comply with UCC Article 9, including those who did not refile when Debtors changed their name.

2. Consignment Vendors whose consignments are governed by UCC Article 2 and therefore are subject to the claims of Debtors' creditors.

---

[1] The VTA is but one example of the absence of evidence before the Court. There are many Consignment Vendors with various forms of VTA and some with no VTA. The Court is using a generic VTA to define the issue.

The difficulty for the Court, and ultimately for the Debtors, is that the classifications are incomplete and are mere allegations. There is a minimal, if any, evidentiary record.

**C. The Debtors' Name Change**

On or about June 25, 2007, Debtors changed their operating name from "Whitehall Jewellers" to "Whitehall Jewelers." *See* Fourth Amended and Restated Certificate of Incorporation of Whitehall Jewellers, Inc. filed with State of Delaware, Secretary of State, Division of Corporations (bearing stamp, "Delivered 11:28 p.m. 06/25/2007, FILED 10:42 p.m. 06/25/2007, SRV 070749273 – 0417913 FILE"). Certain of the Consignment Vendors allege that the Debtors continued to transact business under the name "Whitehall Jewellers" subsequent to the date of the name change. *See, e.g.,* Resp. and Incorporated Mem. Law of Consignment Group in Opp'n to Debtors' Supplemental Motion ¶¶ 24-26.

**D. Termination of VTA**

A number of the Consignment Vendors claim that they terminated their relationship with Debtors prior to the Petition Date. Debtors contest the validity of the terminations.

**PROCEDURAL BACKGROUND**

On June 23, 2008, the Debtors filed a Motion for an Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (A) Authorizing Debtors to Enter Into a Stalking Horse Agency Agreement in Connection with Store Closing Sales; (B) Approving Payment of a Break-up Fee in Connection Therewith; (C) Approving Auction Procedures for a Disposition of Substantially All of the Debtors' Assets, and Subsequent to Such Auction (1) Approving

a Sale Transaction Pursuant to Which Certain of the Debtors' Stores Would Continue as Going Concerns and/or (2) Authorizing the Debtors to (a) Implement an Agency Agreement with a Liquidation Agent, (b) Conduct Store Closing Sales at the Debtors' Locations and (c) Sell Assets at Such Locations Free and Clear of All Liens, Claims and Encumbrances; (D) Establishing Procedures in Connection with the Rejection of Leases for Nonresidential Real Property; and (E) Granting Ancillary and Other Related Relief (the "Sale Motion") [D.I. 15]. By the Sale Motion, the Debtors sought an order permitting them to sell substantially all of their assets, including inventory.

On June 24, 2008, at first day hearings held before this Court, counsel for certain of the Consignment Vendors objected to the Sale Motion because the sale or agreement incident to a going out of business sale included the Consigned Goods. The Court approved the Sale Motion but preserved the Consignment Vendors' objections. On July 10, 2008, this Court held a status conference regarding the issues raised by the Consignment Vendors with respect to the Sale Motion. At the conclusion of the status conference, this Court directed the Debtors to file a Motion specifying the relief Debtors are seeking. On July 15, 2008, Debtors filed the Supplemental Motion in Support of including the Consigned Goods in the Sale.

## DISCUSSION

By their Supplemental Motion, the Debtors are seeking the approval of this Court to approve a sale or a going out of business arrangement to sell substantially all of their assets, including inventory comprised largely of the Consigned Goods. The Debtors argue that the

Court has the authority to permit such relief under Section 363(f)(4) of the Bankruptcy Code because a *bona fide* dispute exists as to the Consigned Goods. However, as discussed below, the Debtors have ignored or avoided the threshold issue in this matter, whether the Consigned Goods are property of the estate.

**1. <u>Application of Section 363(f)(4)</u>**

The Debtors have framed the issue narrowly: whether the Consignment Vendors' interests in the Consigned Goods is in *bona fide* dispute within the meaning of Section 363(f)(4). Section 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if . . .
>
> (4) such interest is in *bona fide* dispute.

11 U.S.C. § 363(f)(4).

The Debtors argue that the dispute here concerning the parties' relative interests in the Consignment Goods qualifies as *bona fide* within the meaning of section 363(f)(4). The Consignment Vendors have asserted that they hold an ownership interest in the Consignment Goods sufficient to prevent their sale. The Debtors, however, argue that there are several objective bases to dispute that assertion as a legal matter:

- First, to the extent that the Consignment Vendors' provision of Consigned Goods to the Debtors is governed by Article 9 of the Uniform Commercial Code, the unperfected and defectively-perfected Consignment Vendors have failed to perfect their asserted interests rendering them merely unsecured creditors with no enforceable interest in the Consignment Goods.

- Further, the non-authenticated Consignment Vendors have failed to take the necessary steps to assert priority of their interests, and thus, as a practical matter, are the equivalent of unsecured creditors, as they are subject to prior floating liens.

- Moreover, if Article 9 does not apply, there is, at a minimum, a *bona fide* dispute as to whether Article 2 of the Uniform Commercial Code would provide the fuel of decision as to the Vendors' asserted interests. Pursuant to UCC § 2-326, the Consigned Goods of all Consignment Vendors (including Perfected Vendors) would be deemed a "sale or return" (as the VTAs stipulate), and thus subject to the claims of Debtors' creditors.

A bankruptcy court may not allow the sale of property as "property of the estate" without first determining whether the property is property of the estate. *See Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (B.A.P. 9th Cir. 2001) ("[T]he property that can be sold free and clear under section 363(f) is defined by subsections (b) and (c) of section 363 as 'property of the estate.'"); *Darby v. Zimmerman (In re Popp)*, 323 B.R. 260, 266 (B.A.P. 9th Cir. 2005) (even before one gets to Section 363(f), Section 363(b), as interpreted by Rodeo, requires that the estate demonstrate that the property it proposes to sell is "property of the estate."); *Anderson v. Conine (In re Robertson)*, 203 F.3d 855, 863 (5th Cir. 2000) (holding that section 363(f) does not permit a trustee to sell the property of a non-debtor spouse because such property was not "property of the estate"); *In re Coburn*, 250 B.R. 401, 403 (Bankr. M.D. Fla. 1999) (finding it necessary to determine whether an asset is property of the estate in order to decide whether the trustee is entitled to sell the asset pursuant to section 363(f)).

In a recent case with strong precedential value to the one at bar, the Bankruptcy Court for the District of Connecticut held that a trustee cannot sell inventory under Sections 363(b) or 363(f) "prior to successful avoidance of the [c]onsigners' interest in the [i]nventory." *In re Interiors of Yesterday, LLC*, 2007 WL 419646 (Bankr. D. Conn. Feb. 2, 2007) at *7. The Court in *Interiors* also rejected the trustee's argument that a sale was permissible under section 363(f)(4) because the consignors' interest in the inventory was subject to *bona fide* dispute, holding that "a Section 363(f)(4) sale cannot be had when there is an unresolved issue of whether the subject property is 'property of the estate.'" *Id.* (quoting *In re Claywell*, 341 B.R. 396, 398 (Bankr. D. Conn. 2006)).

The Court is fully satisfied that the Debtors are not permitted to sell the Consignment Inventory under section 363(f)(4) of the Bankruptcy Code without first demonstrating to this Court that the Consigned Goods are property of the estate. The only evidence presently before the Court, the generic VTA, could support the contrary conclusion, i.e., that the Consigned Goods are the property of the Consignment Vendors. Again, the absence of evidence prevents a definitive ruling.

Debtors rely heavily on the decisions of my learned colleagues, Judge Walsh and Judge Walrath, in *In re Valley Media, Inc.*, 279 B.R. 705 (Bankr. D. Del. 2002); and *In re DVI, Inc.*, 306 B.R. 496 (Bankr. D. Del. 2004). The cases are distinguishable from the case *sub judice* and illustrative of why Debtors cannot prevail on the Supplemental Motion.

In *Valley Media*, Judge Walsh was addressing objections of consignment vendors whose consignment inventory was the subject of an auction and sale. The vendors had not been paid and were potentially liable for royalties to third parties. Judge Walsh focused on the "key question," being whether the debtor was "generally known by its creditors to be substantially engaged in the selling of goods of others." *Valley Media*, 279 B.R. at 124. In such case, the vendors could assert their ownership interest against lien creditors. Judge Walsh, after a two day trial with live and deposition witnesses, found the vendors did not meet the "generally known/substantially engaged test." Judge Walsh also held that the vendors did not lose title when they failed to perfect their consignment interests.

Turning to *DVI*, the issue before Judge Walrath was whether a party asserting a constructive lien on property could prevent the sale of the property on the ground that debtor did not own the property to be sold because debtor held the property in trust for the objector. Judge Walrath permitted the sale to proceed upon the finding (and debtor's agreement) to hold the sale proceeds in escrow pending determination of the objector's interest. Moreover, the evidence established that the sale price was the highest and best bid. Therefore, the objectors interest in the property, if any, was fully protected.

The *Valley Media* and *DVI* decisions therefore stand in stark contrast to the Debtors' stance. First, neither turned on Section 363(f)(4). Second, the *Valley Media* decision came following an evidentiary hearing on an issue raised here, i.e., the "generally known/substantially engaged" test. Third, in *DVI* the objecting party who claimed an interest

in the contested property was fully and adequately protected. Lastly, both *Valley Media* and *DVI* were decided prior to the Third Circuit's mandate in a recent decision (*see infra*) that interests in property can be extinguished only in an adversary proceeding.

Debtors try to neutralize the Consignor Vendors' impassioned objections by arguing that they are not seeking a full and final determination of the Consignor Vendors' interest in the Consigned Goods. The argument ignores reality. The sale of the Consigned Goods, either at an auction or in a going out of business sale, may reduce or eliminate the Consigned Vendors interests, fully and finally.[2]

**2. Have the Debtors sufficiently demonstrated that the Consigned Goods are property of the estate?**

Property of the estate is broadly defined, encompassing "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). *See also, United States v. Whiting Pools*, 462 U.S. 198, 204-05, 103 S. Ct. 2309 (1983) (stating that the scope of section 541(a)(1) is broad). The Debtors argue that the legal and equitable interests they hold in the Consigned Goods are sufficient to render them "property of the estate" within the meaning of Section 541 of the Bankruptcy Code regardless of the validity of the Consignment Vendors' claimed ownership interests.

[2] The stalking horse bid for the going out of business sale is for $.53 on the dollar and there are substantial secured claims ahead of the Consignment Vendors.

The Debtors describe their legal and equitable interests in the Consigned Goods as follows:

- The Debtors have possession of the Consigned Goods and treat those goods in largely the same way that they treat Asset Goods.

- The Debtors have the right and obligation to insure the Consigned Goods.

- The Consigned Goods and Asset Goods are not insured separately.

- Upon receipt of the Consigned Goods from the Consignment Vendors, the Debtors have the authority to make all ordinary-course business decisions regarding the treatment of those goods for sale and the Debtors do not need to obtain permission from the Consignment Vendors to make these decisions.

- Upon the sale of Consigned Goods, the Debtors have the power to pass title to the retail customer.

- Prior to the Petition Date, the proceeds of sales of Consigned Goods were not segregated.

Given the terms of the VTA that the Consignment Vendors remain owners of their goods, as well as Debtors' filing with the Securities and Exchange Commission disclaiming Debtors' ownership, the delineated purported interests are simply not sufficient to demonstrate that the Consigned Goods are property of the estate. The Debtors' burden of proof in this matter is a heavy one. *See In re Summit Global Logistics, Inc.*, 2008 WL 819934, *9 (Bankr. D.N.J. March 26, 2008) ("[W]hen a pre-confirmation [section] 363(b) sale is of all, or substantially all, of the Debtor's property, and is proposed during the beginning stages of the case, the sale transaction should be 'closely scrutinized, and the

proponent bears a heightened burden of proving the elements necessary for authorization.'") (quoting *In re Med. Software Solutions*, 286 B.R. 431, 445 (Bankr. D. Utah 2002)).

Moreover, the Court cannot determine whether the Consigned Goods are property of the estate through a contested matter, such as a sale motion under Section 363. Federal Rule of Bankruptcy Procedure 7001(2) requires that an adversary proceeding be commenced to "determine the validity, priority, or extent of [an] interest in property." A recent case in our Circuit dictates that a lien can only be invalidated by an adversary proceeding commenced pursuant to Rule 7001(2), and not by motion. *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 2008 WL 2498048 (3d Cir. June 24, 2008) at *1. In *SLW Capital*, a Chapter 13 debtor included a provision in her confirmed plan which invalidated a mortgage assignee's claim for a secured interest. The Third Circuit held that lien invalidation can occur only through litigation in an adversary proceeding which provides greater procedural protection and, therefore "the adversary proceeding Rule at issue here is mandatory and establishes a right to specific process that must be afforded. Its mandatory nature is grounded in principles of due process that trump 'finality.'" *Id.* at *6.

Prior to *SLW Capital*, courts had routinely disregarded Rule 7001(2) in matters similar to the one at issue. *See In re Collins*, 180 B.R. 447, 452, n.8 (Bankr. E.D. Vir. 1995) (citing *In re Oneida Lake Dev., Inc.*, 114 B.R. 352, 358 (Bankr. N.D.N.Y. 1990) (stating that § 363(f)(4) is satisfied even though the debtor has not filed an adversary proceeding seeking to avoid the creditor's lien)); *In re Bedford Square Assocs., L.P.*, 247 B.R. 140, 145 (Bankr.

E.D. Penn. 2000) (stating that although the debtor has not commenced a § 544(a)(3) action, the fact that in all probability it could do so successfully is sufficient to establish that a "*bona fide* dispute" for purposes of § 363(f)(4) exists) (citing *In re Collins*, 180 B.R. at 452, n.7; *In re Octagon Roofing*, 123 B.R. 583, 590-592 (Bankr. N.D. Ill. 1991); *In re Oneida Lake Dev., Inc.*, 114 B.R. at 357-58; and *In re Millerburg*, 61 B.R 125, 127-128 (Bankr. E.D.N.C. 1986)). However, it is clear after *SLW Capital* that the law in this Circuit requires strict application of Rule 7001(2) in circumstances where, as here, a debtor seeks to invalidate a creditor's interest.

Accordingly, the Debtors have not met their burden of establishing that the Consigned Goods are property of the estate under Section 363(b) and therefore are not permitted to sell the goods under Section 363(f)(4). The Debtors have also utilized the wrong procedural tool, i.e., a contested matter.

The Court recognizes the burden this decision places upon Debtors to initiate over 120 adversary proceedings, particularly given the short time available before the sale. Nonetheless, the law is clearly established that adversary proceedings are mandated and each Consignment Vendor is entitled to the protections of the law.

## CONCLUSION

The Court has concluded that the Supplemental Motion must be denied pending the Court's resolution in adversary proceedings of the validity of the interests of the Consignment Vendors. While Bankruptcy courts must be flexible in their approach in order

to address the circumstances, the Debtors' effort to utilize Section 363(f)(4) is simply too far beyond the Court's range of permissible movement.

There are a number of issues which remain to be decided. In addition to the perfection issues for the Consignor Vendors' interests, there are such pivotal issues as:

- Was the name change from Whitehall Jewellers to Whitehall Jewelers an effort to deceive the Consignor Vendors?
- Are the Debtors generally known/substantially engaged in the sale of Consignment Goods?
- Did some Consignment Vendors properly terminate their VTA's pre-petition?

The Debtors may, of course, continue with the sale of the Asset Goods. They may not, absent adequate protection to or consent from the Consignment Vendors, proceed with the sale of Consigned Goods.

Dated: July 28, 2008

KEVIN GROSS, U.S.B.J.